JUDGE CROTTY.

07 CV 5543

158-07/PJG

FREEHILL HOGAN & MAHAR LLP
Attorneys for Plaintiff
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax
Peter J. Gutowski (PG 2200)
Pamela L. Schultz (PS 0335)

JUN 1 1 2007

CASHIER

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

SEATREK TRANS PTE LTD,

                     Plaintiff,

        -against -

MEGHNA CEMENT MILLS LTD.

                     Defendant.

-----------------------------------------------------------------x

07 CV    ( )

**VERIFIED COMPLAINT**

Plaintiff SEATREK TRANS PTE LTD (hereinafter "Seatrek"), by its attorneys Freehill Hogan & Mahar, LLP, as and for its Verified Complaint against Defendant MEGHNA CEMENT MILLS LTD. (hereinafter referred to as "Meghna"), alleges upon information and belief as follows:

### Jurisdiction

1.     This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure in that it involves claims for the breach of a maritime contract relating to a charter party. The case also falls within the Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. §1333.

### The Parties

2.     At all times material hereto, Plaintiff Seatrek was and still is a foreign business entity duly organized and existing under the laws of a foreign country with a place of business at No. Shenton Way, #17-08, Singapore 068803-068803 South/Central.

3.     At all times hereto, Defendant Meghna was and still is a foreign business entity organized and existing under the laws of a foreign country with a place of business at Sena Kalyan Bhasan (14th Floor), 195, Motijheel C/A Dhaka-1000, Bangladesh.

<u>**The Dispute**</u>

4.     On or about May 31, 2004 Plaintiff Seatrek, in the capacity as owner, and Hercules Shipping and Trading Pte. Ltd. ("Hercules") as charterer, entered into a maritime contract of charter party for the M/V KS GLORY for a time period of 9 months, 15 days more or less at the charterer's option (hereinafter "the charter party"). A true and correct copy of the charter party is attached as Exhibit A.

5.     Under the terms of the charter party, the performance by the charterer Hercules was to be guaranteed by its associated company, Meghna.

6.     On the same day that the charter party was finalized and agreed, Meghna entered into a guarantee in favor of Seatrek of all of Hercules' obligations under the charter party, including full performance. A true and correct copy of the Guarantee is attached as Exhibit B.

7.     The vessel was duly tendered into service under the charter party and performed, but there is an outstanding balance of hire and other items due under the charter party from Hercules and Meghna for, *inter alia*, charter hire and other related amounts due, totaling $744,692.99.

8.    Despite due demand upon Hercules and Meghna for payment of the sums due, the full amount remains due and owing under the charter party.

9.    The guarantee of the charter party provides that it is to be governed by English law and under English Law, costs including attorney fees, disbursements and interest are recoverable as items of claim.

10.    Plaintiff Seatrek estimates that interest at the rate of 6% from the end of 2004 through the estimated completion of this case (estimated 2 years hence), and legal fees incurred or to be incurred (including but not limited to the legal fees already expended in obtaining a judgment against the charterer Hercules, which judgment confirms the liability of the defendant guarantor Meghna) will total $291,066.85

11.    Upon information and belief, and after investigation, Defendant Meghna cannot be "found" within this District for the purpose of Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims, but Plaintiff is informed that Defendant has, or will shortly have, assets within this District comprising, *inter alia*, cash, funds, escrow funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, from, belonging to, due or for the benefit of Defendant Meghna (collectively hereinafter, "ASSETS"), including but not limited to ASSETS in its own name, or as may be held, received or transferred for its benefit at, moving through, or within the possession, custody or control of banking institutions and/or other institutions or such other garnishees who may be served with a copy of the process of Attachment issued herein.

WHEREFORE, Plaintiff Seatrek prays:

a.    That process in due form of law according to the practice of this Court issue against Defendant Meghna citing it to appear and answer the foregoing, failing which a default will be taken against it for the full amount of Plaintiff's damages, including interest, costs and attorneys' fees;

b.    That if Defendant Meghna cannot be found within this District pursuant to Supplemental Rule B that all tangible or intangible property of Defendant Meghna up to and including the sum of **$ 1,035,759.84** be restrained and attached, including, but not limited to any cash, funds, escrow funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, from, belonging to, due or being transferred from or for the benefit of Defendant Meghna (collectively hereinafter, "ASSETS"), including but not limited to such ASSETS as may be held, received, or transferred in its own name or as may be held, received or transferred for its benefit at, moving through, or within the possession, custody or control of banking institutions and/or other garnishee(s) which may subsequently be identified and upon whom a copy of the Process of Maritime Attachment and Garnishment issued herein may be served;

c.    That this Court enter judgment against Meghna for the full amount of the Plaintiff's damages, including interest, costs and attorneys' fees; and

d.    That Plaintiff Seatrek have such other, further and different relief as this Court may deem just and proper in the premises.

Dated:     New York, New York
           June 11, 2007

FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff
SEATREK TRANS PTE LTD

By: _____
     Peter J Gutowski (PG 2200)
     Pamela L. Schultz (PS 0335)
     80 Pine Street
     New York, NY  10005
     (212) 425-1900
     (212) 425-1901 fax

## ATTORNEY VERIFICATION

STATE OF NEW YORK    )
                        ) ss.:
COUNTY OF NEW YORK  )

       PETER J. GUTOWSKI, being duly sworn, deposes and says as follows:

      1.    I am a partner with the law firm of Freehill Hogan & Mahar, LLP, attorneys for Plaintiff in this action, I have read the foregoing Verified Complaint and know the contents thereof, and the same is true to the best of my knowledge, information and belief.

      2.    The sources of my information and the grounds for my belief are communications, information and documentation provided by our client via its solicitors.

      3.    The reason this verification is made by an attorney and not by the Plaintiff is because the Plaintiff is a foreign entity, none of whose officers are presently within this Judicial District.

                            PETER J. GUTOWSKI

Sworn to before me this
11th day of June, 2007.

                    NOTARY PUBLIC

         JOAN SORRENTINO
     Notary Public, State of New York
          No. 01SO6067227
       Qualified in New York County
   Commission Expires December 3, 2009

# Time Charter

GOVERNMENT FORM
*Approved by the New York Produce Exchange*
November 6th, 1913 - Amended October 20th, 1921; August 6th, 1931; October 3rd, 1946

1. This Charter Party, made and concluded in Singapore......................................31st...day of...May.........................19 ...2004...........
2. Between Seatrek Trans Pte Ltd.....................................................................................................................
3. Disponent Owners / Operators of the good...Panama Flag...................... ~~Steamship~~/Motorship. KS Glory......................of......................
4. of ...23479............tons gross register, and ...13290..........tons net register, ~~having engines of~~..................................~~indicated horse power~~
5. and with hull, machinery and equipment in a thoroughly efficient state, and classed..Biro Klasifikasi Indonesia...........................................
6. at.......................of about...50,805 cbm.........:.........cubic feet grain bale capacity , and about 39,201 metric .........tons ~~of 2240 lbs.~~
7. deadweight all told capacity ~~(cargo and bunkers, including fresh water and stores not exceeding one and one-half percent of ship's deadweight~~ ~~capacity~~
8. ~~allowing a minimum of fifty tons)~~ on a draft of ...11.622 metres.....feet ... inches on.......Summer Salt freeboard, inclusive of permanent bunkers,
9. ~~which are of the capacity of about~~..................:...................................tons ~~of fuel~~, and capable of steaming, throughout the currency of this Charter Party fully laden, under good weather
10. conditions about 11.50.......knots on a consumption of about ...................28.50 MT IFO (180CST) plus MGO about 2.50MT of best Welsh coal ~~best grade fuel oil~~ - best grade Diesel OiL (See Cl 56)
11. now....trading...................................................................................................................................
12. ....................and Hercules Shipping and Trading Pte Ltd ...Charterers of the City of Singapore.....................................
13. Witnesseth, That the said Owners agree to let, and the said Charterers agree to hire the said vessel, from the time of delivery, for
14. about 9months time-charter 15days MOLCO in charterers option via safe berth(s), safe port(s), safe anchorage(s), always afloat,
15. always within I.W.L with lawful generals and harmless bulk cargo. NON-ITF within below mentioned trading limits.
16. Charterers to have liberty to sublet the vessel for all or any part of the time covered by this Charter, but Charterers remaining responsible for
17. the fulfillment of this Charter Party.
18. Vessel to be placed at the disposal of the Charterers, at DLOSP Bangladesh -Singapore , Port in Owners Option any time, day or night
19. Sundays and holidays included (See Cl 70).....................................................................................
20. ~~in such dock or at such wharf or place (where she may safely lie, always afloat, at all times of tide, except as otherwise provided in clause No. 6), as~~
21. ~~the Charterers may direct. If such dock, wharf or place be not available time to count as provided for in clause No. 5.~~ Vessel on her delivery to be
22. ready to receive cargo with holds clean and dried so as to receive charterers intended cargo (See Cl 59) with clean-swept holds and tight, staunch, strong and in every way fitted for the service, having water-ballast, winches and
23. ~~donkey-boiler with sufficient steam power or if not equipped with donkey-boiler, then other power sufficient to run all the winches at one and the same~~
24. time (and with full complement of officers, and crew seamen, engineers and firemen for a vessel of her tonnage), to be employed in carrying lawful merchan-
25. dise, ~~including petroleum or its products, in proper containers, excluding( See Cl 59~~ ) .........................................
26. ~~(vessel is not to be employed in the carriage of Live Stock, but Charterers are to have the privilege of shipping a small number on deck at their risk,~~
27. ~~all necessary fittings and other requirements to be for account of Charterers), in such lawful trades, between safe port and/or ports in British North~~
28. ~~America, and/or United States of America, and / or West Indies, and / or Central America, and/or Caribbean Sea, and / or Gulf of Mexico, and / or~~
29. ~~Mexico, and / or South America.~~........................................................................................~~and / or Europe~~
30. ~~and/or Africa, and/or Asia, and/ or Australia, and/ or Tasmenia, and/ or New Zoeland, but excluding Magdalena River, River St. Lawrence between~~
31. ~~October 31st and May 15th, Hudson Bay and all unsafe ports, also excluding when out of season, White Sea, Black Sea and the Baltic,~~
32. Vessel to be able to trade all countries in Far East excluding Japan and North Korea (See Cl 60)............................................
33. ................................................................................................................................
34. ................................................................................................................................
35. as the Charterers or their Agents shall direct, on the following conditions:





EXHIBIT

A

36.  1. That whilst on hire the Owners shall provide and pay for all provisions, fresh water, wages, and consular shipping and discharging fees of the Crew; shall pay for the

37.  insurance of the vessel, also for all the cabin, deck, engine-room and other necessary stores, including boiler water and maintain her class and keep

38.  the vessel in a thoroughly efficient state in hull, cargo space machinery and equipment for and during the service with inspection on certificates necessary to comply with all current requirements and ports of call or /and during services (See Cl 53)

39.  2. That, the Charterers shall provide and pay for all the fuel except lubricating oil and galley as otherwise agreed, Port Charges, compulsory Pilotages, Agencies,for clearance work only, Commissions,

40.  Consular Charges (except those pertaining to the Crew), and all other usual expenses except those before stated, but when the vessel puts into

41.  a port for causes for which owners are ~~vessel~~ is responsible, then all such charges incurred shall be paid by the Owners. Fumigations ordered because of

42.  illness of the crew or cargoes carried prior to delivery to be for Owners account. Fumigations ordered because of cargoes carried or ports visited while vessel is employed under this

43.  charter to be for Charterers account. ~~All other fumigations to be for Charterers account after vessel has been on charter for a continuous period~~

44.  ~~of six months or more.~~

45.  Charterers are to provide necessary dunnage and shifting boards, also any extra fittings requisite for a special trade or unusual cargo, but

46.  Owners to allow them the use of any dunnage and shifting boards already aboard vessel. Charterers to have the privilege of using shifting boards

47.  for dunnage, they making good any damage thereto.

48.  3. That the Charterers, at the port of delivery, and the Owners, at the port of redelivery, shall take over and pay for all fuel remaining on

49.  board the vessel ~~at the current prices in the respective ports, the vessel to be delivered with not less than~~ .............................. ~~tons and not more than~~

50.  .......................... ~~tons and to be re-delivered with not less than~~ ........................... ~~tons and not more than~~ .......................... ~~tons.~~ (See Cl 54)

51.  4. That the Charterers shall pay for the use and hire of the said Vessel at the rate of USD15,000(U.S.Dollars FifteenThousand Only).

52.  per day pro-rata including overtime payable 15days in advance (See Cl 55)......... ...United States Currency ~~per ton on vessel's total deadweight carrying capacity, including bunkers and~~

53.  ~~stores, on.........................~~ ~~summer freeboard, per Calendar Month,~~ commencing on and from the day time of her delivery, as aforesaid, and at

54.  and after the same rate for any part of a day ~~month;~~ hire to continue until the hour of the day of her re-delivery in like good order and condition, ordinary

55.  wear and tear as a result of the use and trading of the vessel as contemplated by this Charter Party always excepted, to the Owners (unless lost) at on dropping last outward sea pilot 1 safe port Bangladesh – Singapore range, port in charterers option, any time day or night Sundays and Holidays included .

56.  ............................................................ unless otherwise mutually agreed. Charterers are to give Owners not less than 15 (fifteen) days

57.  notice of vessels expected date of re-delivery, and probable port, followed by 10/7/5/3/2/1 days notice of approximate redelivery date and port.

58.  5. Payment of said hire to be made to Owners account ~~in New York~~ in cash in United States Currency, 15days semi monthly in advance, and for the last 15 days half month or

59.  part of same the approximate amount of hire, and ~~should same not cover the actual time, hire is to be paid for the balance day by day, as it becomes~~

60.  ~~due, if so required by Owners, unless bank guarantee or deposit~~ but always subject to the wording of clause 58 is made by the Charterers, otherwise failing the punctual and regular payment of the

61.  hire, or bank guarantee, or on any breach of this Charter Party, the Owners shall be at liberty to withdraw the vessel from the service of the Char-

62.  terers, without prejudice to any claim they (the Owners) may otherwise have on the Charterers. ~~Time to count from 7 a.m. on the working day~~

63.  ~~following that on which written notice of readiness has been given to Charterers or their Agents before 4 p.m. but if required by Charterers, they~~

64.  ~~to have the privilege of using vessel at once, such time used to count as hire.~~

65.  Cash for vessel's ordinary disbursements at any port may be advanced as required by the Captain, by the Charterers of their Agents, subject

66.  to 2½% commission and such advances shall be deducted from the hire. The Charterers, however, shall in no way be responsible for the application

67.  of such advances.



68.       6. That the cargo or cargoes be laden and / or discharged in any safe dock or at any safe wharf or safe place or safe anchorage that Charterers or their Agents may

69. direct, provided the vessel can safely lie always afloat at any time of tide, except at such places where it is customary for similar size vessels to safely

70. lie aground.

71.       7. That the whole reach of the Vessel's Hold, Decks, and usual places of loading (not more than she can reasonably stow and carry), also

72. accommodations for Supercargo, if carried, shall be at the Charterers' disposal, reserving only proper and sufficient space for Ship's officers, crew,

73. tackle, apparel, furniture, provisions, stores and fuel. Charterers have the privilege of passengers in far as accommodation allow, Charterers

74. paying Owners ............... per day per passenger for accommodations and meals. However, it is agreed that in case any fines or extra expenses are

75. incurred in the consequence of the carriage of passengers, Charterers are to bear such risk and expense.

76.       8. That the Captain shall prosecute his voyages with the utmost despatch, and shall render all customary assistance with ship's crew and

77. boats. The Captain (although appointed by the Owners), shall be under the orders and directions of the Charterers as regards employment and

78. agency; and Charterers are to load, stow, and trim, tally and discharge the cargo at their expense and responsibility under the supervision

79. (except stevedore damage as per Cl. 33 ) of the Captain, who is to sign Bills of Lading for

cargo as presented, in conformity with Mate's or Tally Clerk's receipts.

80.       9. That if the Charterers shall have reason to be dissatisfied with the conduct of the Captain, Officers, or Engineers, the Owners shall on

81. receiving particulars of the complaint, investigate the same, and, if necessary, make a change in the appointments.

82.       10. That the Charterers shall have permission to appoint a Supercargo, who shall accompany the vessel and see that voyages are prosecuted

83. with the utmost despatch. He is to be furnished with free accommodation, and same fare as provided for Captain's table, Charterers paying at the

84. rate of $1.00 per day. Owners to victual Pilots and Customs Officers, and also, when authorized by Charterers or their Agents, to victual Tally,

85. Clerks, Stevedores's Foreman, etc., Charterers paying at the current rate per meal, for all such victualling. USD1500 lumpsum per month or

prorata for all such victualling, cables/communication/entertainment and representation.

.86.       11. That the Charterers shall furnish the Captain from time to time with all requisite instructions and sailing directions, in writing, in English and the

87. Captain shall keep a full and correct Log of the voyage or voyages, which are to be patent to the Charterers or their Agents, and furnish the Char-

88. terers, their Agents or Supercargo, when required, with legible true copy of daily deck and engine logs in English with a true copy of daily Logs

. showing the course of the vessel and distance run and the con-

89. sumption of fuel. Charterers will arrange to make copy of the log book at their own expense.

90.       12. That the Captain shall use diligence in caring for the ventilation of the cargo.

91.       13. That the Charterers shall have the option of continuing this charter for a further period of .............................................................

92. ...................................................................................................................................................................................................

93. on giving written notice thereof to the Owners or their Agents ........ days previous to the expiration of the first named term, or any declared option.

94.       14. That if required by Charterers, time not to commence before 08 June 2004 ................................................. and should vessel

95. not have given written notice of readiness on or before 22 June 2004 .................................... but not later than 4 p.m. Charterers or

96. their Agents to have the option of cancelling this Charter at any time not later than the day of vessel's readiness. Owners to give 15/10 / 7/5/3/2/1

days expected date of delivery and probable port.

97.       15. That in the event of the loss of time from deficiency and/or default of men or deficiency of stores, fire, breakdown or damages to hull, machinery or equipment,

98. grounding, detention by average accidents to ship or cargo, drydocking for the purpose of examination or painting bottom , or by any other cause whatsover

99. preventing the full working of the vessel, the payment of hire shall cease for the time thereby lost; and if upon the voyage the speed be reduced by

100. defect in or breakdown of any part of her hull, machinery or equipment, the time so lost, and the cost of any extra fuel consumed in consequence

101. thereof, and all extra expenses shall be deducted from the hire. Any stevedore and/or labour charges for breakdown of vessels equipment not purchased by charterers to be owners account.

102.       16.That should the Vessel be lost, money paid in advance and not earned (reckoning from the date of loss or being last heard of) shall be

103. returned to the Charterers at once. The act of God, enemies, fire, restraint of Princes, Rulers and People, and all dangers and accidents of the Seas,

104. Rivers, Machinery, Boilers and Steam Navigation, and errors of Navigation throughout this Charter Party, always mutually excepted.




105.      The vessel shall have the liberty to sail with or without pilots, to tow and to be towed, to assist vessels in distress, and to deviate for the

106. purpose of saving life and property.

107.   17. That should any dispute arise between Owners and the Charterers, the matter in dispute shall be referred to three persons at Singapore ~~New York~~

108. one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them, shall be final, and for

109. the purpose of enforcing any award, this agreement may be made a rule of the Court. The Arbitrators shall be ~~commercial men~~ shipping men, conversant with shipping matters and affairs. (See Cl 82)

110.   18. That the Owners shall have a lien upon all cargoes, and all sub-freights and all sub-hire for any amounts due under this Charter, including General Aver-

111. age contributions, and the Charterers to have a lien on the Ship for all monies paid in advance and not earned, and any overpaid hire or excess

112. deposit to be returned at once. Charterers will not suffer, nor permit to be continued, any lien or encumbrance incurred by them or their agents, which

113. might have priority over the title and interest of the owners in the vessel.

114.   19. That all derelicts and salvage shall be for Owners' and Charterers' equal benefit after deducting Owners' and Charterers' expenses and

115. Crew's proportion. General Average shall be adjusted, stated and settled, according to ~~Rules 1 to 15, inclusive, 17 to 22, inclusive, and Rule F of~~

116. ~~York-Antwerp Rules 1974 or any amendment in London 1924, at such port or place In the United States as may be selected by the carrier, and as~~ ~~to matters not provided for by these~~

117. ~~Rules, according to the laws and usages at the port of New York. In such adjustment disbursements in foreign currencies shall be exchanged into~~

118. United States money at the rate prevailing on the dates made and allowances for damage to cargo claimed in foreign currency shall be converted at

119. the rate prevailing on the last day of discharge at the port or place of final discharge of such damaged cargo from the ship. Average agreement or

120. bond and such additional security, as may be required by the carrier, must be furnished before delivery of the goods. Such cash deposit as the carrier

121. or his agents may deem sufficient as additional security for the contribution of the goods and for any salvage and special charges thereon, shall, if

122. required, be made by the goods, shippers, consignees or owners of the goods to the carrier before delivery. Such deposit shall, at the option of the

123. carrier, be payable in United States money and be remitted to the adjuster. When so remitted the deposit shall be held in a special account at the

124. place of adjustment in the name of the adjuster pending settlement of the General Average and refunds or credit balances, if any, shall be paid in

125. United States money,

126.      In the event of accident, danger, damage, or disaster, before or after commencement of the voyage resulting from any cause whatsoever,

127. whether due to negligence or not, for which, or for the consequence of which, the carrier is not responsible, by statute, contract, or otherwise, the

128. goods, the shipper and the consignee, jointly and severally, shall contribute with the carrier in general average to the payment of any sacrifices,

129. losses, or expenses of a general average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the

130. goods. If a salving ship is owned or operated by the carrier, salvage shall be paid for as fully and in the same manner as if such salving ship or

131. ~~ships belonged to strangers.~~

132.      Provisions as to General Average in accordance with the above are to be included in all bills of lading issued hereunder. It is understood that charterers hire is not to contribute to General Average.

133.   20. Fuel used by the vessel while off hire, ~~also for cooking, condensing water, or for grates and stoves~~ to be agreed to as to quantity, and the

134. cost of replacing same, to be allowed by Owners.

135.   21. ~~That as the vessel may be from time to time employed in tropical waters during the term of this Charter, Vessel is to be docked at a~~

136. ~~convenient place, bottom cleaned and painted whenever Charterers and Captain think necessary, at least once in every six months, reckoning from~~

137. ~~time of last painting, and payment of the hire to be suspended until she is again in proper state for the service.~~

138. .................................................................................................................................................

139. .................................................................................................................................................

140.   22. Owners shall maintain the gear of the ship as fitted, providing gear (for all derricks) capable of handling lifts up to as specified in Cl. Owners to provide on the vessel sufficient light clusters as on board for night work at all hatches simultaneously free of charge to charterers and to maintain same in efficient working condition throughout this charter ~~three tons,~~ also

141. providing ropes, falls, slings and blocks as on board. If ~~vessel is fitted with derricks capable of handling heavier lifts, Owners are to provide~~ ~~necessary gear for~~



142. same, otherwise equipment and gear for heavier lifts shall be for Charterers' account. Owners also to provide sufficient light on the vessel lanterns and oil for

143. night work, and vessel to give use of electric light when so fitted, but any additional lights over those on board to be at Charterers' expense. The

144. Charterers to have the use of any gear on board the vessel.

145.        23. Vessel to work night and day, Sunday and Holiday(s) included if required by Charterers, and all winches, to be at Charterers' disposal during loading and discharging;

146. steamer to provide one winchman per hatch to work winches day and night, as required, Charterers agreeing to pay officers, engineers, winchmen,

147. deck hands and donkeymen for overtime work done in accordance with the working hours and rates stated in the ship's articles. If the rules of the

148. port, or labor unions, prevent crew from driving winches, shore Winchmen to be paid by Charterers. In the event of a disabled winch or winches, or

149. insufficient power to operate winches, Owners to pay for shore engine, or engines, in lieu thereof, if required, and pay any loss of time occasioned

150. thereby.

151.        24. It is also mutually agreed that this Charter is subject to all the terms and provisions of and all the exemptions from liability contained

152. in the Act of Congress of the United States approved on the 13th day of February, 1893, and entitled "An Act relating to Navigation of Vessels;

153. etc.," in respect of all cargo shipped under this charter to or from the United States of America. It is further subject to the following clauses, both

154. of which are to be included in all bills of lading issued hereunder:

155.                                    U.S.A. Clause Paramount

156.        This bill of lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States, approved April

157. 16, 1936, which shall be deemed to be incorporated herein, and nothing herein contained shall be deemed a surrender by the carrier of

158. any of its rights or immunities or an increase of any of its responsibilities or liabilities under said Act. If any term of this bill of lading

159. be repugnant to said Act to any extent, such term shall be void to that extent, but no further.

160.                                    Both to Blame Collision Clause

161.        If the ship comes into collision with another ship as a result of the negligence of the other ship and any act neglect or default of the

162. Master, mariner, pilot or the servants of the Carrier in the navigation or in the management of the ship, the owners of the goods carried

163. hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying ship or her owners in so far as such loss

164. or liability represents loss of, or damage to, or any claim whatsoever of the owners of said goods, paid or payable by the other or non-

165. carrying ship or her owners to the owners of said goods and set off, recouped or recovered by the other or non-carrying ship or her

166. owners as part of their claim against the carrying ship or carrier.

167.        25. The vessel shall not be required to enter any icebound port, or any port where lights or lightships have been or are about to be with-

168. drawn by reason of ice, or where there is risk that in the ordinary course of things the vessel will not be able on account of ice to safely enter the

169. port or to get out after having completed loading or discharging.

170.        26. Nothing herein stated is to be construed as a demise of the vessel to the Time Charterers. The owners to remain responsible for the.

171. navigation of the vessel, act of pilots and tugboats, insurance, crew, and all other matters, same as when trading for their own account.

172.        27. A commission of 2 1/4 1.25 per cent is payable by the Vessel and Owners to ...............................................................

173. ..........................................................................................................................................................

174. on hire earned and paid under this Charter, and also upon any continuation or extension of this Charter.

175.        28. An address commission of 2 1/2 1.25 per cent payable to ..................................... on the hire earned and paid under this Charter.

Clauses No. 29 to 82 both inclusive as attached, are to be fully incorporated in this charter-party

<br>

Owners / Operators                                    . Charterers



Seatrek Trans Pte Ltd                                    Hercules Shipping and Trading Pte Ltd

SEATREK TRANS PTE LTD

............................................
Authorised Signature

## *ADDITIONAL CLAUSES TO M.V. "KS GLORY"*
## *CHARTER PARTY DATED 31st May, 2004*

**Clause 29.**
Charterers may deduct from the charter hire any amount disbursed for Owners' account at time of next hire payment. Notwithstanding the contents of Clause 5, Charterers may deduct from the penultimate payment(s) of charter hire the estimated cost of bunkers remaining on board on redelivery and the estimated expenses per port maximum US$1,000 unless specified by Charterers for submission to Owners.

**Clause 30.**
a)  The vessel's officers and crew shall perform shaping up of the vessel's hatches, cranes and gangway prior to and upon arrival at a port, in order to commence loading or discharging operations without delay.

   The Owners and the Master to undertake best efforts to cooperate with the Charterers for the best stowage of cargo, and the Master, officers and crew to make best efforts to collect restow, provide any useful dunnage, lashings, etc. for the next use after completion of the voyage during this charter.

b)  Vessel to provide sufficient deckhands for normal ship's duties during this Charter Party. Time charter hire to include rendering customary assistance by the crew and following operations.

- rigging of derricks/cranes
- shifting operations and docking
- bunkering
- maintaining power while loading and/or discharging and care for winches/derricks
- supervision of cargo/stowage during loading and/or discharging and whilst vessel is at sea
- to prepare vessel's hatches/holds and cargo gear prior commencement of operations
- to assist in recording necessary remarks in mate's receipt, time sheets and time keepers' report.

**Clause 31.**
Charterers have the liberty to fly their own house flag and paint the funnel with their own colours, also if desired, they have the liberty to paint insignia on vessel's sides. Any extra expenses arising in this connection and also for repainting Owners insignia to be for the account of Charterers and in Charterers time.

**Clause 32.**
Owners to supply valid certificate, including of oil pollution certificates, for the agreed trading limits and such certificates to be maintained throughout the period of the charter. Any consequences due to vessel lacking necessary certificates, or if same should be outdated, to be for Owners' risk and expenses.
Vessel's cargo gear and all other equipment shall comply with the regulations of the

- 1 -




## ADDITIONAL CLAUSES TO M.V. "KS GLORY"
## CHARTER PARTY DATED 31st May, 2004

countries to which the vessel may trade, and Owners are to ensure that vessel is at all time in possession of valid up to date certificate of efficiency to comply with such regulations.

If stevedores, longshoremen or other workmen including pilots, tugmen etc., are not permitted to work due to failure of Master and/or Owners and/or Owners agents to comply with the aforementioned regulations or because vessel is not in possession of such valid up-to-date certificates of efficiency, then Charterers may suspend hire for the time thereby lost, and Owners to pay all extra expenses incurred incidental to and resulting from such failure. Vessel has lighting apparatus sufficient for night work in all holds simultaneously.

**Clause 33.**
Stevedores to be appointed and paid by the Charterers but to work under the supervision of the Master. Should any damage be caused to the vessel or her fittings by the stevedores, the Master has to try to let stevedores repair such damage and try to settle the matter directly with them.

The Charterers shall not be responsible for any damage caused by stevedores to the vessel, unless the damage is proved by relevant parties and or relevant documents. The Master to endeavour to obtain written acknowledgement of the damage and liability from the concerned stevedores and immediately notify the Charterers or their agents of such damage within 24 hours from the occurrence in order assist Owners to have the said damages repaired.

**Clause 34.**
Owners guarantee that during this charter period all vessels gear can work simultaneously. In case any gear out of order then the inefficient period to be off-hired basis the number of gears. In the event of cargo handling gear deficiency, Charterers have the right to continue working the vessel by using shore equipment, in which event the vessel shall remain on hire. However, Owners shall reimburse Charterers (by deduction from hire) for all extra costs directly incurred, which arise as a consequence of using shore equipment.
Furthermore, any time lost due to inefficiencies in working the vessel with shore equipment shall be deducted from the hire on a pro-rata basis.
Without prejudice to Clause 48, if the vessel is moved off the berth due to a deficiency in the cargo handling gear, the vessel shall remain off-hire until the deficiency has been remedied and the vessel is in the same position, as if there had been no deficiency originally.

**Clause 35.**
The Master shall supervise stowage of the cargo as well as instruct one of his officers to supervise and he is to furnish Charterers with stowage plan as well as other documents customarily used.

- 2 -




## ADDITIONAL CLAUSES TO M.V. "KS GLORY"
## CHARTER PARTY DATED 31st May, 2004

**Clause 36.**
In the event of the vessel deviating (which expression includes putting back, or putting into any port other than to which she is bound under the instructions of Charterers) for any cause or for an purpose which would result in payments of hire being suspended under any provision of this charter, no hire shall in any case be payable as from the commencement of such deviation until the time when the vessel is again ready and in an efficient state to resume her service from a position not less favourable to Charterers than that at which the deviation commenced.

In the event of the vessel, for any cause or for any purpose aforesaid, putting into any port other than the port for which she is bound on the instructions of Charterers, the port charges, pilotages and other expenses at such port shall be borne by Owners.

**Clause 37.**
Vessel to be covered by order P & I Insurance and Cargo Indemnity Insurance, and Charterers to have the benefit of such P & I Insurance and Cargo Indemnity as far as the rules permit Cargo claims, if any to be settled in accordance with the latest amendments of the New York Produce Exchange Interclub Agreement.
Owners P & I Club : Terra Nova Protection & Indemnity Agency

**Clause 38.**
Owners guarantee that the vessel has not traded to Israel and that she is not blacklisted by trading countries due to vessels flag/ ownership / operator / age and whatsoever.

**Clause 39.**
Latest on arrival at first loading port, all holds to be clean, swept, free of rust, flakes, scales and residues of previous cargoes and ready in all respects, to the satisfaction of concerned surveyors or recognized port authorities, to receive Charterers intended cargoes.  If the vessel should fail to pass the required surveys, all associated expenses directly incurred in ensuring the vessel is load ready, including labour standby costs, to be for Owners' account. Vessel is to be off-hire until loading is fully resumed.  However, if some hold(s) are accepted, Charterers to pay hire proportionate to the number of the hold loading operation actually commenced.

**Clause 40**
Charterers have the option of redelivering the vessel without cleaning holds in which case Charterers to compensate Owners lumpsum USD2500 in lieu of such hold cleaning.

**Clause 41.**
Owners guarantee vessel always to be safe in ballast and it is agreed that if any solid ballast




## *ADDITIONAL CLAUSES TO M.V. "KS GLORY" CHARTER PARTY DATED 31st May, 2004*

is requested, all expenses for same including time used in loading and discharging to be for Owners' account.

### Clause 42.
Replenishment of bunkers is arranged and paid for by the Charterers, but always under the supervision of the Master. The Master shall pay due diligence for replenishment of bunkers so as not to cause oil spillage while bunkering.

### Clause 43.
Owners guarantee that vessels tanktops is flat and suitable for grab discharge subject to vessels tanktop strength and Masters approval which not to be unreasonably withheld. Owners guarantee that vessel has unobstructed holds and is suitable for grab discharge. Charterers have the option of using bulldozers with rubber-tyres to work in holds.

### Clause 44.
Vessel to load lawful generals and harmless bulk cargo with intention to carry bulk / bagged cement, cement clinker, gypsum, limestone, flyash, bauxite, coal and other cargoes relating to the production of cement and as per cargo exclusion clause in the charter party

### Clause 45.
The performance of this charter party by Hercules Shipping and Trading Pte Ltd Singapore is to be guaranteed by Meghna Cement Mills Ltd Bangladesh

### Clause 46.
Owners to be responsible for any consequences owing to smuggling by members of this Ship's crew/officers.

### Clause 47.
Should the vessel be arrested during the currency of this Charter Party at the suit of any person having or purporting to have a claim against or any interest in the vessel, hire under this Charter Party shall not be payable in respect of any period whilst the vessel remains under arrest or remains unemployed as the result of such arrest and the Owners shall reimburse to the Charterers any expenditure which they may incur under this Charter Party in respect of any period during which by virtue of the operation of the Clause no hire is payable.

This Clause shall be inoperative should the arrest be caused through any omission of the Charterers.

### Clause 48.
In the event of loss of time either in port or at sea, deviation from the course of the voyage

- 4 -




## ADDITIONAL CLAUSES TO M.V. "KS GLORY"
## CHARTER PARTY DATED 31st May, 2004

or putting back whilst on voyage, by reason of breakdown of machinery, collision standing, fire or any other accident or damage to the vessel, or drydocking or periodical survey, or sickness or accident to the Master, Officers, crew or any person on board the vessel other than persons travelling by the Charterers' request or by reason of landing stowaway or refugee, or by reason of the refusal of the Master, Officers or crew to do their duties, or any Owners' matters, the hire shall be suspended from the time of such insufficiency in port or at sea, deviation or putting back until vessel is again efficient in the same or equivalent position and the voyage resumed therefrom.   Owners to give Charterers not less than 48 hours approximate notice of resumption of the service.   If the deviation is less than 48 hours then Owners to give Charterers approximate 24 hours notice of resumption of the service.

All expenses incurred including bunkers consumed during such period of suspension shall be for Owners' account.

### Clause 49.
Officers and crew to comply with vaccination and sanitary regulations in all ports of call and corresponding certificates available on board, otherwise any detention and fines resulting from not having these certificates on board to be for Owners account.

### Clause 50.
Should the vessel be boycotted, picketed, blacklisted or similar incident at any port or place by shore and or port labours and or tugboats and or pilots, or by government and or any authority, by reason of the vessel's flag/registry/manning or ownership or terms and conditions on which members of the officers/crew are employed, except by the reason why the vessel is flag of convenience or by reason of trading of this vessel or other vessel under the same ownership, management, operation or control, or by reason of the vessel's construction and or her cargo gear and or her fitting and or her other equipment. All consequences and any extra expenses incurred therefrom to be for Owners' account and the Charterers are entitled to place the vessel off-hire for any time lost by such reasons. If the vessel has been off-hired for a continuous period of 30 (thirty) days during this Charter Party, the Charterers are at the liberty to cancel the balance period of this Charter Party and redelivery shall take place as is where is provided vessel is free of cargo.

### Clause 51.
Hire not to contribute to General Average.

### Clause 52.
Owners guarantee that the vessels hatchcovers are watertight all throughout the charter period and if any hatchcover found defective, same to be off-hired basis the number of gears. Hatchcovers to be rectified at owners time and expense to charterers satisfaction.

- 5 -




## ADDITIONAL CLAUSES TO M.V. "KS GLORY"
## CHARTER PARTY DATED 31st May, 2004

**Clause 53.**
Owners guarantee that vessel possesses valid international measurement certificate, required by the authorities in any country to which the vessel may trade.

**Clause 54.**
Bunkers on delivery as on board with minimum IFO(180cst)/MT and about MGO/MT however Owners guarantee that vessel can perform one voyage to next convenient bunkering port.
Bunkers on redelivery to be about same quantities as on delivery.
Bunker price to be USD   per metric ton for IFO and USD   per metric ton for MGO which to be agreed prior delivery but basis Singapore bunker prices.

**Clause 55.**
On receipt of owners invoice charterers to pay within 2 banking days after vessels delivery, 1st hire payment together with bunkers on delivery.

**Clause 56.**
MV KS GLORY (EX-NAME : LIMA)
FLAG : PANAMA
BUILT : 1980, JAPAN
DWT : 39,201 DWT ON 11.622M SSW
LOA/BEAM : 188.56 / 28.40
HO/HA : 5/5
TYPE OF HATCH COVERS :MACGREGOR HYDRAULIC FOLDING
GRT :23,479
NRT : 13,290
CALL SIGN : HOUN
SATCOM/TLX : 435682320@ln.mail65.com.sg
TPC AT SUMMER DARFT : 45.4 CM
GEAR : 4 CR X 20 TON
THE LENGTH OF OUTREACH : NO.1,2,3 CRANE 10.1 MTR
NO.4 CRANE 11.8 MTR
CO2 FITTED : YES
PNI CLUB : TERRA NOVA PROTECTION & INDEMNITY AGENCY
LONDON, ENGLAND
CLASSIFICATION SOCIETY(FULL MEMBER) :BIRO KLASIFIKASI INDONESIA
VSL IS FULLY ITF FITTED : NO
HOLD GRAIN / BALE CUBIC B/DOWN :
NO.1 8,376 8,159
NO.2 10,947 10,770

- 6 -




## *ADDITIONAL CLAUSES TO M.V. "KS GLORY"*
## *CHARTER PARTY DATED 31st May, 2004*

NO.3 10,663 10,463
NO.4 10,873 10,694
NO.5 9,946 9,796

TOTAL 50,805 49,882
HATCH SIZE (L X B)
NO.1  20.0  X 12.5
NO.2  20.0  X 12.5
NO.3  20.0  X 12.5
NO.4  20.0  X 12.5
NO.5  20.0  X 12.5

TANK TOP STRENGTH : 18-22 MT/M3

SPEED/CONS :
LADEN ABT 11.50 KNOTS ON 28.50MT IFO 180CST + 2.50MT MGO
BALLAST ABT 12.00 KNOTS ON 27.00MT IFO 180CST + 2.50MT MGO
IN PORT 3.00 MT MGO WORKING

HULL N MACHINERY INSURANCE WITH :
ORIENTAL FIRE & MARINE INSURANCE CO., LTD
INSURED VALUE : USD 6,000,000
MASTER'S NAME : MR. AUNG SOE SWE
CREW NATIONALITY : 22 MYANMAR + 1 PHILIPINO
CREW NUMBER  : 23
LLOYDS' NUMBER : IMO NUMBER 7921813
ALL FIG GIVEN IN GOOD FAITH BUT "ABOUT" AND W.O.G.

**Clause 57.**
Intermediate payment of USD2000.00 for cleaning holds to be settled privately between charterers and Master.

**Clause 58.**
Notwithstanding Clause 5, where there is failure to make "punctual and regular" payment of hire, the Charterers shall be given by the Owners three clear banking days written notice to rectify the failure, and when so rectified within those three days following Owners' notice, the payment shall stand as regular and punctual and the Owners will not withdraw the vessel.





## ADDITIONAL CLAUSES TO M.V. "KS GLORY"
## CHARTER PARTY DATED 31st May, 2004

**Clause 59. Cargo Exclusions**
The vessel is not to be employed in the carriage of nuclear and radioactive cargo / waste / material or its products, nuclear fuels, war materials, all dangerous, hazardous, injurious, inflammable, corrosive, explosive cargoes, goods/ commodities as listed in latest IMDG code and/or any subsequent modifications / amendments thereof, livestocks, animals, acids, arms, and ammunitions, isotope, detonators, bombs loaded or not, dynamite, TNT, sulphur, black powder, blasting caps, explosive of any kind, any kind of logs/mahogany, asphalt nuclear, pitch in bulk or in drums, direct reduced iron ore, pre-produced iron ore, pellets, silicon sand, silicon manganese, hides of any kind, naphtha, petroleum or its products, tar/bitumen or any of its products, calcium carbide, ammonium nitrate, accosoted goods, motor spirits  motor blocks and metal turnings/ shavings / borings/ cuttings, copra pellets/products, oilcakes, rape seed expellsers, sunflower seed expellers and pellets, fish meal, petcoke, resin bones, meat bones meal, salt salt petre , hot brequet iron, iron ore briquettes, sponge iron, shavings, cotton, harmful and corrosive fertilizers, asbestos, nigar-seed, seed cake, maioc and / or manioc pellets, sludge ore, nickel ore, pig iron, byrites, bulk borax, quick lime, dangerous chemicals, caustic, soda, soda ash in bulk, turpentine, chloride, hydrochloride, livestock , creosoted goods, contraband goods and all kinds of grains.

**Clause 60**
**Trading Exclusions**
Vessel able to trade all countries in Far East via safe anchorage(s) safe berth(s) safe port(s) always afloat always accessible always within Institute Warranty Limits excluding Japan and North Korea. and / or countries where war or warlike hostilities prevail and/or war risk zones designated by Lloyds Underwriters

**Clause 61.**
Cables/ Victualling / Entertainment : USD1500.00 per month or prorata.

**Clause 62.**
Existing basic war risk insurance premiums and crew war bonus to be for Owners account. Any additional premiums/crew bonus due to Charterers trading of the vessel to be for Charterers account.   When required by Owners and/or Charterers, Owners will take out any required additional insurance to cover against war and warlike situations including seizure, detention, trapping, blockage or any other consequences of war.

Such premium/insurance/bonus to be paid by Charterers after receipt of proper vouchers from Owners underwriters.

**Clause 63.**
Deleted.

- 8 -





## *ADDITIONAL CLAUSES TO M.V. "KS GLORY"*
## *CHARTER PARTY DATED 31st May, 2004*

**Clause 64.**
Charterers have the option to use any lashing equipment if any on board the vessel.

**Clause 65.**
On/Off hire surveys to be carried out, the costs being equally shared between Owners and Charterers, but the time occupied for on-hire survey to be for Owners' account and the time occupied for off-hire survey to be for Charterers account.  On hire survey to be held at delivery port or in Charterers' option at first loading port and off-hire survey to be held at redelivery port or in Charterers' option at last discharging port.

**Clause 66.**
In the event that an Original Bill of Lading is not available at time of vessel's arrival at discharging port, Owners /Master to agree/allow to discharge cargo without presentation of Original Bills of Lading against Charterers single Letter of Indemnity in owners P and I Club with receivers bank guarantee. Charterers to fax the fully executed L.O.I to owners and their agents before vessels arrival at discharge port and the original to be sent to owners as soon as possible.
Master to sign Bills of Lading in accordance with mates or tally clerk receipts.

**Clause 67.**
Deleted

**Clause 68.**
Equipment lashing materials and dunnage put on board by Charterers remains their property and best possible care will be taken of Charterers' materials by vessel's officers and crew.

**Clause 69.**
a)  The vessel shall be delivered with valid deratting or deratting exemption certificate. If such certificate does not cover the whole period of this Charter, costs of renewal of certificate and fumigation if necessary shall be for Owners' account.  Any detention and extra expenses incurred thereby shall be also for the Owners' account.

b)  Normal quarantine time and expenses for the vessel's entering port shall be for Charterers' account, but any time of detention and expenses for quarantine due to pestilence, illness and etc. of Master, Officers and crew shall be for Owners' account.

**Clause 70.**
Owners to give Charterers to give 15/10 days approximate notice of delivery date and area




## ADDITIONAL CLAUSES TO M.V. "KS GLORY"
## CHARTER PARTY DATED 31st May, 2004

and 7/5/3/2/1 day definite notice of date and port.

**Clause 71.**
The Charterers shall have the benefit of any return insurance premium receivable by the Owners from their underwriters as and when received from the underwriters by reason of the vessel being in port for a minimum period of thirty days if on full hire for this period or pro-rata for the time actually on-hire.

**Clause 72.**
Charterers are allowed to attach cargo handling equipment including grabs to hook to vessel's cranes.

**Clause 73.**
Charterers are not to be held responsible for normal wear and tear resulting from normal grab discharging

**Clause 74.**
Time of delivery and redelivery should be based on GMT for computing vessel's hire.

**Clause 75.**
Watchmen costs whether compulsory or not to be for charterers account.

**Clause 76.**
From the date of coming into force of the International Safety Management (ISM) Code in relation to the vessel and thereafter during the currency of this Charter Party, the Owners shall procure that the vessel and "The Company" (as defined by the ISM Code) shall comply with the requirements of the ISM Code.   Upon request the Owners shall provide a copy of the relevant document of compliance (DOC) and Safety Management Certificate (SMC) to the Charterers.

Except as otherwise provided in this Charter Party, loss, damage, expense or delay caused by failure on the part of "The Company" to comply with the ISM Code shall be for the Owners' account.

Owners guarantee that vessel complies with the requirement of ISM Codes.

**Clause 77.   Oil Pollution**
a)   If the Owners are required to establish or maintain financial security or responsibility in respect of oil or other pollution damage to enable the vessel lawfully to enter, remain in or leave any port, place, territorial or contiguous waters of any country or state in

- 10 -




## ADDITIONAL CLAUSES TO M.V. "KS GLORY"
## CHARTER PARTY DATED 31st May, 2004

performance of this Charter Party, the Owners shall make all arrangements by bond or otherwise may be necessitated to satisfy such requirements at Owners' sole expense.

b)  The Charterers shall be under no responsibility for all consequences (including loss of time) of oil or other pollution damage and any failure or inability of the Owners to do so as provided for the above and any loss of time incurred thereby shall be off-hire, unless the same shall be due to the default of Charterers.

c)  The Owners shall indemnify the Charterers harmless against all consequences (including fines if any imposed to the Charterers) of oil or other pollution damage, unless due to Charterers and any failure or inability of the owners to do so as provided for in the preceding paragraph a).

### Clause 78.

Unless otherwise agreed, the Charterers shall have the liberty to sublet the vessel for all or any part of the time covered by this Charter Party, but the Charterers remain responsible for the fulfillment of the Charter Party.

### Clause 79.   Extension of Off-Hire Period

Should the vessel be placed off-hire during the currency of this Charter for any reason whatsoever, all off-hire period to be added back to this period time-charter.

### Clause 80.   Major War

If major war breaks out between any two or more of the following countries; United Kingdom, U.S.A., CIS, People's Republic of China, Japan, Singapore, Malaysia, Indonesia S.Korea, Thailand, Bangladesh and the trading countries under this fixture directly affecting the performance of this Charter, both Owners and Charterers shall have the option of cancelling this charter whereupon Charterers shall redeliver the vessel to Owners, if she has cargo on board, after discharge thereof at destination, or if debarred from reaching or entering it, at a near open and safe port as directed by Charterers, or if she has no cargo on board, at a port at which she stays or if at sea at a near and safe port as directed by Charterers.   In all cases hire shall be paid until vessel's redelivery.

### Clause 81.

This contract shall be governed by and construed in accordance with English law and any dispute arising out of or in connection with this contract shall be referred to arbitration in Singapore. Each party to appoint an arbitrator and should they be unable to comprise, the decision of an umpire selected by them to be final. If one party fails appointment of an arbitrator within seven clear days after notice of appointment of arbitrator given by the

- 11 -




## ADDITIONAL CLAUSES TO M.V. "KS GLORY"
## CHARTER PARTY DATED 31st May, 2004

other party, the party who has appointed an arbitrator may appoint that arbitrator to be final.

In cases where neither the claim nor any counterclaim exceeds the sum of US$50,000 or such other sum the parties may agree the Arbitration shall be conducted in accordance with the small claims procedure current at the time when the Arbitration proceedings are commenced.

**Clause 82.**
Cargo to be loaded, stowed, trimmed and discharged at Charterers' time, risk and expense.


*******

## BIMCO STANDARD WAR RISKS CLAUSE FOR TIME CHARTERS, 1993
## CODE NAME : "CONWARTIME 1993"

(1)  For the purpose of this clause, the words :

  a)  "Owners" shall include the shipowners, bareboat Charterers, disponent Owners, managers or other operators who are charged with the management of the vessel, and the Master: and

  b)  "War Risks" shall include any war (whether actual or threatened), act of war, civil war, hostilities, revolution, rebellion, civil commotion, warlike operations, the laying of mines (whether actual or reported), acts of piracy, acts of terrorists, acts of hostility or malicious damage, blockades (whether imposed against all vessels or imposed selectively against vessels of certain flags or ownership or against certain cargoes or crews or otherwise howsoever), by any person, body, terrorist or political group, or the government of any state whatsoever, which in the reasonable judgement of the Master and/or the Owners, may be dangerous or are likely to become dangerous to the vessel, her cargo, crew or other persons on board the vessel.

(2)  The vessel, unless the written consent of the Owners be first obtained, shall not be ordered to or required to continue to or through, any port, place, area or zone (whether of land or sea), or any waterway or canal, where it appears that the vessel, her cargo, crew or other persons on board the vessel, in the reasonable judgement of the Master and/or the Owners, may be, or are likely to be, exposed to War Risks.

- 12 -





### ADDITIONAL CLAUSES TO M.V. "KS GLORY"
### CHARTER PARTY DATED 31st May, 2004

Should the vessel be within any such place as aforesaid, which only becomes dangerous, or is likely to be or to become dangerous, after her entry into it, she shall be at liberty to leave it.

(3) The vessel shall not be required to load contraband cargo, or to pass through any blockade, whether such blockade be imposed on all vessels, or is imposed selectively in any way whatsoever against vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever, or to proceed to an area where she shall be subject, or is likely to be subject to a belligerent's right of search and/or confiscation.

(4) (a) The Owners may effect war risks insurance in respect of the Hull and Machinery of the vessel and their other interests (including but not limited to, loss of earnings and detention, the crew and their Protection and Indemnity Risks), and the premiums and/or calls therefor shall be for their account.

(b) If the Underwriters of such insurance should require payment of premiums and/or calls because, pursuant to the Charterers' order, the vessel is within, or is due to enter and remain within, any area or areas which are specified by such Underwriters as being subject to additional premiums because of War Risks, then such premiums and/or calls shall be reimbursed by the Charterers to the Owners at the same time as the next payment of hire is due.

(5) If the Owners become liable under the terms of employment to pay to the crew any bonus or additional wages in respect of sailing into an area which is dangerous in the manner defined by the said terms, then such bonus or additional wages shall be reimbursed to the Owners by the Charterers at the same time as the next payment of hire is due.

(6) The vessel shall have liberty :

(a) to comply with all orders, directions, recommendations or advice as to departure, arrival, routes, sailing in convoy, ports of call, stoppages, destinations, discharge of cargo, delivery, or in any other way whatsoever, which are given by the Government of the Nation under whose flag the vessel sails, or other Government to whose laws the Owners are subject, or any other Government, body or group whatsoever acting with the power to compel compliance with their orders or directions ;

(b) to comply with the order, directions or recommendations of any war risks underwriters who have the authority to give the same under the terms of the war

- 13 -




### ADDITIONAL CLAUSES TO M.V. "KS GLORY"
### CHARTER PARTY DATED 31st May, 2004

risks insurance ;

(c) to comply with the terms of any resolution of the Security Council of the United Nations, any directives of the European Community, the effective orders of any other Supranational body which has the right to issue and give the same, and with national laws aimed at enforcing the same to which the Owners are subject, and to obey the orders and directions of those who are charged with their enforcement;

(d) to divert and discharge at any other port any cargo or part thereof which may render the vessel liable to confiscation as a contraband carrier;

(e) to divert and call at any other port to charge the crew or any part thereof or other persons on board the vessel when there is reason to believe that they may be subject to interment, imprisonment or other sanctions.

(7)  If in accordance with their rights under the foregoing provisions of this Clause, the Owners shall refuse to proceed to the loading or discharging ports, or any one or more of them, they shall immediately inform the Charterers.  No cargo shall be discharged at any alternative port without first giving the Charterers notice of the Owners' intention to do so, and requesting them to nominate a safe port for such discharge. Failing such nomination by the Charterers within 48 hours of the receipt of such notice and request, the Owners may discharge the cargo at any safe port or their own choice.

(8)  If in compliance with any of the provision of sub-clauses (2) to (7) of this clause anything is done or not done, such shall not be deemed a deviation but shall be considered as due fulfillment of the Charter Party.

### NEW BOTH TO BLAME COLLISION CLAUSE

If the liability for any collision in which the vessel is involved while performing this Charter Party fails to be determined in accordance with the laws of the united States of America, the following Clause shall apply:-

"If the ship comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the Master, Mariner, Pilot or the servants of the carrier in the navigation or in the management of the vessel, the Owners of the goods carried hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying ship or her Owners in so far as such loss or liability represents loss of or damage to or any claim whatsoever of the Owners of the said goods, paid or payable by the other or

- 14 -




## *ADDITIONAL CLAUSES TO M.V. "KS GLORY"*
## *CHARTER PARTY DATED 31st May, 2004*

non-carrying ship or her Owners to the Owners of the said goods and set off, recouped or recovered by the other non-carrying ship or her Owners as part of their claim against the carrying vessel or carrier. The foregoing provisions shall also apply where the Owners, Operators or those in charge of any ship or ships or objects other than, or in additions to, the colliding ships or objects are at fault in respect to a collision or contact."

### NEW JASON CLAUSE

In the event of accident, danger, damage or disaster before or after the commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, the carrier is not responsible, by statute, contract or otherwise, the goods, Shippers, Consignees or Owners of the goods shall contribute with the Carrier in general average to the payment of any sacrifices, losses or expenses of a general average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the goods.

### GENERAL PARAMOUNT CLAUSE

The Hague Rules contained in the International Convention for the Unification of certain rules relating to Bills of Lading, dated Brussels the 25th August 1924 as enacted in the country of shipment shall apply to this contract. When no such enactment is in force in the country of shipment, the corresponding legislation of the country of destination shall apply, but in respect of shipments to which no such enactments are compulsorily applicable, the terms of the said Convention shall apply.

### U.S.A. CLAUSE PARAMOUNT

This Bill of Lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States, approved 16 April, 1936, which shall be deemed to be incorporated herein, and nothing herein contained shall be deemed a surrender by the carrier of any of its rights or immunities or an increase of any of its responsibilities or liabilities under said Act. If any terms of this Bill of Lading be repugnant to said Act to any extent, such terms shall be valid to that extent, but no further.






# Meghna Cement Mills Ltd.

SENA KALYAN BHABAN (14TH FLOOR)
195, MOTIJHEEL C/A DHAKA-1000, BANGLADESH.
PHONE : 9556452-54, 7112617-18
FAX : 880-2-9556459, 9560973, E-mail : bgc@bdcom.com
web : www.bashundharagroup.com

## LETTER OF GUARANTEE

Dated: 31st May 04

To: The Owners / Disponent Owners / Operators of MV K S Glory

Dear Sirs,

Re: MV K S Glory /Acct Hercules Shipping and Trading Co. Pte Ltd., Singapore
C/p dated 31 May 2004

We are aware that your above mentioned vessel has been fixed to our associate company, M/s Hercules Shipping and Trading Co. Pte Ltd., Singapore under a charter party dated 31st May 2004 for 9 months Period Time Charter at the hire rate of USD15,000/DIOT.

In consideration of your fixing the vessel with M/s M/s Hercules Shipping and Trading Co. Pte Ltd., Singapore, we, Meghna Cement Mills Ltd., Bangladesh hereby unconditionally guarantee you, due performance of the charter party by M/s Hercules Shipping and Trading Co. Pte Ltd., Singapore as per terms of the charter party, and hereby irrevocably indemnify and to hold you harmless in respect of any liability, loss, or damage of whatsoever nature which you may sustain by reason of non-performance of the said charter party by M/s Hercules Shipping and Trading, Singapore

Furthermore,

a) In the event of any legal proceedings being commenced against you or any of your servants or agents as a result of non-performance of M/s Hercules Shipping and Trading Singapore, we hereby undertake to provide you or them on demand with sufficient funds to defend such legal proceedings.

b) If, as a result of non-performance by M/s Hercules Shipping and Trading Co. Pte Ltd., Singapore, the ship or any other ship or property belonging to you should be arrested or detained or if the arrest or detention thereof should be threatened, we hereby undertake to provide on demand such bail or other security as may be required to prevent such arrest or detention or to secure the release of such ship or property and to indemnify you in respect of any liability, loss, damage or expenses caused by such arrest or detention or threatened arrest or detention whether or not such arrest or detention or threatened arrest or detention may be justified.

c) This indemnity shall be governed by and construed in accordance with English law and each and every person liable under this indemnity shall at your request submit to the jurisdiction of the High Court of Justice of Singapore.

Yours faithfully

For and on behalf of
Meghna Cement Mills Ltd., Bangladesh

MEGHNA CEMENT MILLS LTD.

Authorised Signature        Authorised Signature

Withnessth by:
M/s Hercules Shipping and Trading Co.
Pte Ltd., Singapore



EXHIBIT

B

Factory : Mongla Port I/A, Mongla, Bagerhat. Phone : 04031-377, 385, 394, Fax : 041-763031, 04031-371, E-mail : mcml@khulnanet.net